United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDY RAMIREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTHEW CATE, et al.,<br><br>    Defendants. | Case No. 12-cv-00383-WHO (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This is a federal civil rights action filed pursuant to 42 U.S.C. § 1983 by a *pro se* state prisoner. For the reasons stated herein, defendants' motion to dismiss is GRANTED in part and DENIED in part, and defendants' motion for summary judgment is GRANTED. Plaintiff Ramirez's Eighth Amendment claims survive the motion to dismiss. Defendants are directed to file, on or before June 20, 2014, a motion for summary judgment, or other dispositive motion, regarding plaintiff Ramirez's Eighth Amendment claims.

## DISCUSSION

### I. Background

Plaintiff Edy Ramirez has been held at Salinas Valley State Prison ("SVSP") since March 2, 2010. (Am. Compl. ¶ 46.) On January 11, 2011, two members of the Southern

1  Hispanics gang attacked and wounded three correctional officers at Pelican Bay State
2  Prison.  (Defs.' Mots. Dismiss & Summ. J. ("MSJ") at 7.)  Thinking this incident could
3  spark similar attacks on staff in other prisons, the California Department of Corrections
4  and Rehabilitation ("CDCR") issued a state-wide order placing all "Southern Hispanic"
5  inmates on a "modified program."  (*Id*.)  During a "modified program" inmates are denied
6  access to outside exercise, telephones, the canteen, religious services, visits, packages, and
7  the law library.  (Am. Compl. ¶ 48.)  The state-wide modified program was terminated on
8  January 13, 2011, but directed prisons to make their own determination as to when to
9  return to a "normal" program.  Based on intelligence gathered by gang investigators, SVSP
10 continued a modified program on various Southern Hispanic inmates in certain housing
11 units through July 7, 2011.  (MSJ at 7–8.)  Ramirez was affiliated with the Southern
12 Hispanic "disruptive group."  (*Id.,* Alaniz Decl. ¶ 3.)

## II.  Motion to Dismiss

Defendants move to dismiss Ramirez's (1) Eighth Amendment claims owing to his failure to exhaust his administrative remedies, (2) claims against defendant Cate, Secretary of the CDCR, for failure to allege any personal participation in the alleged constitutional violations; and (3) claims for damages for violations of the California state constitution.

### A.  Eighth Amendment Claims

Defendants move to dismiss Ramirez's Eighth Amendment claims for failure to exhaust his administrative remedies.  More specifically, his Eighth Amendment claim asserts that defendants limited his outdoor recreation time to two to four hours per week under the "normal" program, while his exhausted administrative grievance makes no mention of the "normal" program.  (MSJ at 11–12.)  While Ramirez does mention his lack of outdoor exercise time during normal program in his complaint (Am. Compl. ¶ 49), all his claims concern the modified program, including his Eighth Amendment claim.  (*Id.* ¶¶ 28, 44.)  As defendants concede that Ramirez did properly exhaust his appeal based on his lack of outdoor exercise time during the "modified" program (MSJ at 12), their motion to dismiss due to lack of exhaustion is DENIED.  As stated elsewhere in this order,

defendants will be allowed to file further motions regarding these claims.

## B. Claims against Cate

Defendants move for dismissal of Ramirez's equal protection claims against defendant Cate because he fails to state that Cate "had any personal participation in the alleged constitutional violations," as required by section 1983. (MSJ at 13.)

"In a § 1983 suit or a *Bivens* action — where masters do not answer for the torts of their servants — the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003–04 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim — and, more specifically, on the state of mind required by the particular claim — not on a generally applicable concept of supervisory liability. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012). Knowing acquiescence is insufficient to establish a supervisor's liability for constitutional torts that require specific intent, such as the claims of invidious racial discrimination at issue in *Iqbal*. *Id.* at 1071 (citing *Iqbal*, 129 S. Ct. at 1948–49). In such cases, the supervisor must act with the purpose of violating the plaintiff's constitutional rights. *Id.*

Ramirez fails to adequately allege that defendant Cate had any personal involvement in the January 2011 modified program at issue. He claims defendant Cate ought to be liable under section 1983 for "allowing the existence of [the] policy" in question. (Am. Compl. ¶¶ 14, 16, 18, 20, 22, 24, 26.) Ramirez, however, does not even mention Cate's name in the statement of facts in his complaint. (*Id.* ¶¶ 46–50.) In his opposition, Ramirez merely alleges Cate "promoted a[n] underground policy directive."

3

1  (Opp. to MSJ ("Opp.") at 2.)  He states that Cate "[failed] to fulfill [his] own statutory duty
2  to promulgate adequate policy and procedures." (*Id.* at 3.)  He also argues that Cate ought
3  to be liable under section 1983 because he "hold[s] [a] supervisory position[]." (*Id.* at 7.)
4  None of these arguments amounts to an allegation that defendant Cate was personally
5  involved in the modified program.  Ramirez alleges no facts regarding the existence of the
6  "underground policy directive" which would make his claim against Cate plausible on its
7  face.  Defendant Cate is not liable in section 1983 actions merely because he holds a
8  supervisory position.  Accordingly, defendant's motion to dismiss all claims under section
9  1983 against defendant Cate is GRANTED, the claims against him are DISMISSED, and
10 he is TERMINATED as a defendant in this action.

### C. State Constitutional Claims

Ramirez seeks monetary damages for alleged violations of the California constitution's right to equal protection (CA. Const. art. I, § 7) and its prohibition of cruel and unusual punishment (CA. Const. art. I, § 17).  (Am. Compl. ¶¶ 30–44.)  Defendants move to dismiss because there is no private right to action for violations of California's constitution.

Ramirez's state constitutional claims fail as a matter of law because no California court has held that either Article I, § 7 or Article I, § 17 provides a private right of action for damages.  *Lopez v. Youngblood*, 609 F. Supp. 2d 1125, 1142 (E.D. Cal. 2009); *Gatti v. Brazelton*, No. 12-01452, 2012 WL 5387239, at *5 (E.D. Cal. 2012).  Ramirez contends that he should be able to bring these state constitutional claims under section 1983.  (Opp. at 7–8.)  Section 1983, however, relates only to violations of the federal constitution. Accordingly, defendants' motion to dismiss is GRANTED as to these claims, which are DISMISSED.

### III. Motion for Summary Judgment

Ramirez claims that defendants' institution of modified program was race-based, and therefore in violation of his equal protection rights.  Defendants move for summary judgment, arguing that Ramirez failed to state such a claim because the modified program

1  did not involve a suspect class and that the program was reasonably related to a legitimate
2  penological interest.

### A. Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. In contrast, on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. The court is only concerned with disputes over material facts. "[F]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

**B.  Equal Protection Claim**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent.  *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).  To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because of plaintiff's membership in a protected class.  *Serrano v. Francis*, 345 F.3d 1071, 1081–82 (9th Cir. 2003).

Ramirez contends that because the modified program applied to all "Southern Hispanics," he was denied access to various services solely because of his ethnicity.  Defendants counter that the modified program was applied to inmates based only on their "membership or association with organized and identifiable disruptive groups," and that the "Southern Hispanics" is such a group.  (MSJ at 16–17.)

"Classifying prisoners by their gang affiliation doesn't trigger heightened scrutiny under the Equal Protection Clause." *Baker v. Kernan*, 795 F. Supp. 2d 992, 994 (9th Cir. 2011).  The Ninth Circuit has found no race-based use of a modified program when implemented against the same gang at issue here because (1) "it applied equally to Hispanic and non-Hispanic northerners, and didn't apply at all to Hispanics who steered clear of the Northern Hispanic and Southern Hispanic gangs."  *Id.*; *see also Escalante v. Hubbard*, No. C 10-1583 RS (PR), 2010 WL 4916404, at *5 (N.D. Cal. Nov. 22, 2010) ("[T]he discussion of 'Northern Hispanics' at the disciplinary hearing had to do with the name of [the] gang, not with a broad racial category.").

Defendants have provided evidence that presents a similar situation.  The evidence shows that the "Southern Hispanics" gang crosses racial and ethnic lines.  (MSJ, Decl.

6

Walker ¶ 5.) The modified program applied only to those inmates, such as plaintiff Ramirez, identified as members or associates of the Southern Hispanics. (*Id.*; Alaniz Decl. ¶ 2.) Hispanics who had no ties to the Southern Hispanics were not subject to modified program. (MSJ, Walker Decl. ¶ 16.) The program did not apply to other gangs with predominantly Hispanic membership. (*Id.*)

In his response to the motion for summary judgment, Ramirez alleges that the modified program also applied to "Mexican Nationals." (Opp. at 16.) Assuming this is true, it does not show there is a genuine dispute whether Ramirez's inclusion in the program was race-based, rather than based on his membership in a gang. Defendants also note that the "Mexican Nationals" are similarly a discrete, gang-based disruptive group. (MSJ, Walker Decl. ¶ 5.) Ramirez argues that the defendants simply used the term "Southern Hispanics" to qualify prisoners for the modified program without a "case-by-case decision," yet points to no specific facts to support this assertion. (Opp. at 16.) Ramirez does not contest his association with the Southern Hispanics. Given his failure to set forth facts showing that there is a genuine dispute as to the fact that applying the modified program to members or associates of the Southern Hispanics is not a race-based classification, along with the Ninth Circuit's previous conclusion that modified programs applied to members of the "Southern Hispanics" gang is not race-based, SVSP's implementation of the January 11, 2011 modified program is not subject to strict scrutiny. Because the implementation was not race-based, defendants "needed only a reasonable basis for implementing the modified program." *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* Four factors are to be considered:

> (1) Whether there is a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it. A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational, and the

7

  government objective must be a legitimate and neutral one.

(2) Whether there are alternative means of exercising the right that remains open. If so, courts should be particularly conscious of the measure of judicial deference owed to corrections officials.

(3) What impact the accommodation of the asserted right will have on guards, other inmates and the allocation of prison resources generally.

(4) If the accommodation will have a significant ripple effect the courts should be particularly deferential to the informed discretion of correctional officials. If there is an absence of ready alternatives, this is evidence of the reasonableness of a prison regulation.

*Id.* at 89–91. Prison security is a legitimate penological interest. *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999).

  Because the implementation was not race-based, defendants "needed only a reasonable basis for implementing the modified program." *See Safley*, 482 U.S. at 89. In his opposition to this motion for summary judgment, Ramirez argues that the modified program was initiated solely because of an incident at another prison and a "vague fear of threat of assault against the staff" of SVSP. (Opp. at 17.) Defendants have provided evidence that the modified program was implemented for the Southern Hispanics gang because of actual prison security concerns and that the modified program's restrictions were all reasonably related to this interest. The modified program was connected with prison security initially because of an attack on prison staff by Southern Hispanics. (MSJ, Walker Decl. ¶ 14.) Defendants believed prison security was in jeopardy at SVSP based on weekly reports from investigations of a conspiracy by Southern Hispanics, especially those in the facility holding Ramirez, to attack prison staff. (*Id.* ¶¶ 16–17.)

  Defendants argue that although there were restrictions on prisoners, alternative means of exercising some of their rights existed. The record shows the Ramirez was able to receive packages, was granted canteen access for hygiene products, and could worship inside his cell. (Am. Compl., Ex. A.) Defendants further contend that allowing any more access to outdoor exercise, visitations, and telephones, among other things, would put

1    inmates in closer contact with prison staff, and allow them to communicate in furtherance
2    of a conspiracy to assault staff, thus frustrating the very purpose of the modified program.
3    (MSJ at 19.)
4        Ramirez's opposition points to no ready alternative to the restrictions of the
5    modified program. He argues the modified program was instituted due to "vague" fears of
6    violence but he introduces no evidence showing a genuine dispute about the existence of a
7    specific threat to prison staff, from a specific gang, or in a specific facility of SVSP. He
8    also fails to introduce any facts showing that he had no alternate means of exercising some
9    of the rights curtailed by the modified program.
10       Application of the modified program to the Southern Hispanics was not a race-
11   based policy deserving of strict scrutiny. The modified program was reasonably related to
12   the legitimate penological goal of prison security. There is no genuine dispute that there
13   existed some alternate means of exercising some of the curtailed rights, that further
14   accommodating those rights would have had adverse effects on prison staff, and that there
15   were no ready alternatives to the modified program. Accordingly, defendants' motion for
16   summary judgment on Ramirez's equal protection claims is GRANTED.

## CONCLUSION

18   For the reasons set forth above, defendants' motion to dismiss all claims against
19   defendant Cate, and all state law claims, is GRANTED. The state law claims and the
20   claims against Cate are DISMISSED, and he is TERMINATED as a defendant in this
21   action.
22       Defendants' motion for summary judgment (Docket No. 21) is GRANTED because
23   Ramirez has failed to show that there are triable issues of material fact as to his equal
24   protection claims. Defendants are entitled to judgment as a matter of law as to all equal
25   protection claims, and judgment will be entered accordingly at a later date. Ramirez's
26   motion for the appointment of counsel (Docket No. 48) is DENIED without prejudice.
27   The Clerk shall terminate Docket Nos. 21 and 48.
28       Defendants' motion to dismiss Ramirez's Eighth Amendment claims is DENIED.

Defendants are directed to file a dispositive motion or notice regarding such motion on or before June 20, 2014, unless an extension is granted.

Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure. Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If any defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due.

Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on defendants no later than forty-five (45) days from the date defendants' motion is filed. Defendants shall file a reply brief no later than fifteen (15) days after plaintiff's opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

All communications by the plaintiff with the Court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

Extensions of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

Pro se prisoner-plaintiffs must be given "notice of what is required of them in order to oppose" summary judgment motions at the time of filing of the motions, rather than when the court orders service of process or otherwise before the motions are filed. *Woods*

1  *v. Carey*, No. 09-15548, slip op. 7871, 7874 (9th Cir. July 6, 2012).  Defendants shall

2  provide the following notice to plaintiff when they file and serve any motion for summary

3  judgment:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact — that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.

*Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998).

**IT IS SO ORDERED.**

**Dated:**  March 18, 2014

_____
WILLIAM H. ORRICK
United States District Judge

11